# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

ALLOC, INC., a Delaware corporation,
BERRY WOOD S.A., a French company,

                Plaintiffs,

     v.

PERGO, INC., a Delaware corporation,
PERGO AB, a Swedish company,

                Defendants.
_____   Case No. 02-C-736

PERGO, INC., and PERGO (EUROPE) AB,

                Plaintiffs,

     v.

ALLOC, INC., ARMSTRONG WORLD
INDUSTRIES, INC. and BERRY FINANCE NV,

                Defendants.
_____

# ORDER

The above-entitled action was tried to a jury commencing on November 26, 2007. At trial, Pergo, Inc. and Pergo AB (collectively, "Pergo") claimed that flooring products manufactured by Alloc, Inc., Berry Wood S.A., and Armstrong World Industries, Inc. (collectively, "the Alloc Parties") infringe patents owned by Pergo, U.S. Patent No. 6,397,547 ("the '547 patent") and U.S. Patent No. 6,421,970 ("the '970 patent"). On December 13, 2007, the jury returned a verdict finding that claims 1 and 32 of the '547 patent and claims 1, 4, 7, 10, 11, and 12 of the '970 patent (collectively, "the asserted claims") are not infringed and are invalid on multiple

grounds. Pergo has filed post-trial motions arguing that the court should set aside the jury's verdict and enter judgment as a matter of law for Pergo pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, or, in the alternative, that the court order a new trial pursuant to Rule 59. Pergo seeks judgment as a matter of law and/or a new trial on every issue the jury found against Pergo including the issues of best mode, derivation, effective filing date of the '970 patent, enablement, infringement of the '970 patent, and obviousness. The court will address these issues in turn.

Seventh Circuit law governs Pergo's post-trial motions. *See, e.g, Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1347 (Fed. Cir. 2005) (applying the law of the Seventh Circuit in determining the sufficiency of post-judgment motions). It is well-established that a jury verdict will not be set aside if a reasonable basis exists in the record to support that verdict. *Spesco, Inc. v. General Elec. Co.*, 719 F.2d 233, 237 (7th Cir. 1983); *McMath v. City of Gary, Ind.*, 976 F.2d 1026, 1032 (7th Cir. 1992). To prevail on its Rule 50 motions, Pergo must show that no reasonable jury could have found for the Alloc Parties on the above issues when viewing the evidence in a light most favorable to the Alloc Parties. *See Denius v. Dunlap*, 330 F.3d 919, 927-28 (7th Cir. 2003). In ruling on a Rule 50(b) motion, a court must not reweigh the evidence nor substitute its own credibility determinations for that of the jury. *Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 578-79 (7th Cir. 2003) (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51 (2000)). Rather, the evidence must be viewed in a light most favorable to the

prevailing party, taking into consideration all of the record evidence and drawing all reasonable inferences in the prevailing party's favor. *Id.*; *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 857 (7th Cir. 2001).

Under Rule 59(a), a new trial may be granted where "the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial is not fair to the moving party." *Tapia v. City of Greenwood*, 965 F.2d 336, 338 (7th Cir. 1992); *see also Bankcard Am., Inc. v. Universal Bancard Sys., Inc.*, 203 F.3d 477, 480 (7th Cir. 2000) (stating that a new trial should be granted if the verdict is against the "manifest weight of the evidence" or if a prejudicial error occurred). In determining whether to grant a new trial, "a jury verdict must be accorded great deference." *Foster v. Cont'l Can Corp.*, 783 F.2d 731, 735 (7th Cir. 1986). Indeed, the Seventh Circuit has held that "new trials granted because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Latino v. Kaizer*, 58 F.3d 310, 315 (7th Cir. 1995).

### A. Best Mode

Pursuant to 35 U.S.C. § 112, a patentee is obliged to disclose his or her preferred embodiment or "best mode" if the patentee had one at the time of filing the patent application. *AllVoice Computing PLC v. Nuance Communications, Inc.*, 504 F.3d 1236, 1246-47 (Fed. Cir. 2007); 35 U.S.C. § 112 ("The specification shall . . . set forth the best mode contemplated by the inventor of carrying out his invention.").

Case 2:02-cv-00736-JPS   Filed 05/01/08   Page 3 of 27   Document 287

Here, the jury concluded that Pergo failed to disclose the best mode in claims 1 and 4 of the '970 patent. Specifically, in response to Question No. 4A on the special verdict form, the jury found that the Alloc Parties proved by clear and convincing evidence that claims 1 and 4 of the '970 patent were invalid for failing to set forth the best mode of making and using the invention claimed therein by failing to disclose "Celleten." In response to Question No. 4B on the special verdict form, the jury found that the Alloc Parties proved by clear and convincing evidence that "Celleten" was Goran Mårtensson's best mode of practicing his invention at the time his patent application was filed. And in response to Question No. 4C on the special verdict form, the jury found that the Alloc Parties did not prove by clear and convincing evidence that the specifications of the '547 and '970 patents were inadequate to allow a person of ordinary skill in the art to make and use the inventor's best mode.

Pergo moves pursuant to Rules 49(b), 50(b) and 58 for judgment as a matter of law that the Alloc Parties did not carry their burden of proving that claims 1 and 4 of the '970 patent are invalid for failing to meet the best mode requirement of 35 U.S.C. § 112. Pergo argues that both Question Nos. 4B and 4C on the special verdict form needed to be answered in the affirmative in order for the jury to conclude that claims 1 and 4 of the '970 patent were invalid for failure to meet the best mode requirement. Pergo asserts that the jury's determination that the Alloc Parties proved by clear and convincing evidence that claims 1 and 4 of the '970 patent were invalid for failing to meet the best mode requirement (response to Question No. 4A), is inconsistent with the jury's determination that Alloc Parties did

not prove by clear and convincing evidence that the specifications of the '547 and '970 patents are inadequate to allow a person of ordinary skill in the art to make and use the inventor's best mode (response to Question No. 4C). Pergo argues that because these answers are inconsistent, judgment should be entered in favor of Pergo pursuant to Rule 49(b). *See* Fed. R. Civ. P. 49(b)(3)(A).

The jury's answers to Questions Nos. 4A and 4C are not inconsistent. Indeed, given that the jury's response to Question No. 4A indicates that the Alloc parties did *not* prove by clear and convincing evidence that claims 1 and 32 of the '542 patent were invalid for failing to meet the best mode requirement, the jury was required to answer "No" to Question No. 4C. Question No. 4C addressed the specifications of both the '547 and '970 patents. Therefore, the jury could only answer "Yes" to Question No. 4C if the jury concluded that the specifications for *both* the '547 and '970 patents were inadequate to allow a person of ordinary skill in the art to make and use the inventor's best mode. The jury's determination that the Alloc Parties proved by clear and convincing evidence that claims 1 and 4 of the '970 patent were invalid for failing to meet the best mode requirement is consistent with the jury's conclusion that the Alloc Parties did not prove by clear and convincing evidence that the specifications for *both* the '547 and '970 patents were inadequate to allow a person of ordinary skill in the art to make and use the inventor's best mode.

The parties dispute whether the special verdict form in this case qualifies as a "Special Verdict" under Rule 49(a) or a "General Verdict" with accompanying interrogatories under Rule 49(b). The Alloc Parties contend that by failing to object

Case 2:02-cv-00736-JPS   Filed 05/01/08   Page 5 of 27   Document 287

to the wording of the special verdict form or to demand that the issues of fact for the best mode of the two patents-in-suit be addressed separately before the jury retired, Pergo waived any objection on the grounds of inconsistency. Irregardless, although the wording of Question No. 4C could have been made more specific by addressing the patents-in-suit separately, the jury's answers, as noted above, were not irreconcilably inconsistent. Therefore, the jury's responses do not require the court to set aside their verdict. *See Freeman v. Chicago Park Dist.*, 189 F.3d 613, 615 (7th Cir. 1999) ("Jury verdicts must be interpreted so as to avoid inconsistency whenever possible."). In light of the foregoing, Pergo's motion for judgment as a matter of law on the issue of best mode will be denied.

**B.    Derivation**

Pursuant to 35 U.S.C. § 102(f), a person is not entitled to a patent if "he did not himself invent the subject matter sought to be patented." *Id.* To prove derivation under section 102(f), "the party asserting invalidity must prove both prior conception of the invention by another and communication of that conception to the patentee by clear and convincing evidence." *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1344 (Fed. Cir. 2003) (internal quotation omitted). To provide grounds for derivation, "the communication must be sufficient to enable one of ordinary skill in the art to make the patented invention." *Id.* Here, in response to Question No. 8 on the special verdict form, the jury found that all the asserted claims of the patents-in-suit were invalid because the claimed inventions were derived from Darko Perván and/or Tony Perván.

Pergo moves pursuant to Rules 50(b) and 59 for judgment as a matter of law, or, in the alternative, for a new trial, asserting that the Alloc Parties did not carry their burden of proving that all the asserted claims were invalid because the claimed inventions were derived from another. Pergo argues that the Alloc Parties failed to offer clear and convincing evidence that Darko Perván and/or Tony Perván conceived of the complete and operative invention that would later be described in the asserted claims of the '547 and '970 patents. *See, e.g., Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986) ("Conception is the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention . . . ") (internal quotation omitted). Specifically, Pergo asserts that the evidence that was submitted by the Alloc Parties was insufficient to establish prior conception because the evidence did not demonstrate that Darko Perván and/or Tony Perván conceived of a tight, glueless, mechanically locking joint, which included a snapping web and snapping groove on a tongue and groove prior to the invention date of the patents-in-suit. Pergo argues that Darko Perván's testimony regarding a tool to make a tight joint lacked the specifics required to show prior conception of the claimed tight joint. (Trial Tr. 1276-77.) *See, e.g., Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994) ("The conception analysis necessarily turns on the inventor's ability to describe his invention with particularity. Until he can do so, he cannot prove possession of the complete mental picture of the invention.") Pergo also argues that the Alloc Parties offered no evidence to corroborate the testimony of Darko Perván, a five percent

owner of the parent company to Alloc, Inc. Pergo argues that Darko Perván's uncorroborated testimony, as an interested person recalling long-past events, does not, of itself, provide the clear and convincing evidence required to invalidate a patent. *See Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1369 (Fed. Cir. 1998) (holding that uncorroborated testimony of interested persons does not provide the clear and convincing evidence necessary to establish prior knowledge and use by others). Finally, Pergo argues that the Alloc Parties offered no evidence that an enabling disclosure was communicated to the named inventors of the patents-in-suit.

A review of the record reveals that a reasonable basis exists to support the jury's verdict that the inventions claimed in the patents-in-suit were derived from either Darko Perván and/or Tony Perván. For example, the Alloc Parties presented evidence that Darko Perván of Välinge Innovations and Pergo met in September and October of 1994 to discuss Välinge's flooring panels and its glueless mechanical joint system. (Trial Tr. 1191-93.) The purpose of the meetings from Välinge's perspective was to "sell [its] ideas and [its] technology to get the license agreement with [Pergo]." (Trial Tr. 1222.) Darko Perván testified as to the specifics of his disclosures regarding how to make tight joints, snapping web/protrusions, and the use of particleboard. (Trial Tr. 1190, 1204-05, 1272-77; *see also* Exs. 59, 227-T.) In addition, although the Alloc Parties offered no evidence that disclosure was communicated directly to the named inventors of the patents-in-suit, the Alloc Parties offered evidence that disclosures sufficient to enable one to make a tight joint were

made at the two 1994 meetings to Pergo's in-house patent lawyer and author of the patents-in-suit, Yngve Stenberg, and to Pergo's management and engineers. (Trial Tr. 631-33, 1070.) Finally, Darko Perván's testimony was corroborated by his presentation materials (Trial Ex. 1425), the correspondence between himself and Pergo's management (Trial Ex. 227-T), the testimony of Pergo's own employees (Trial Tr. 610-13, 623-24), and the Perván Swedish and PCT patent applications. (Trial Exs. 59, 147.) In sum, drawing all inferences in the Alloc Parties' favor, and viewing the evidence presented at trial as whole and in a light most favorable to the Alloc Parties, a reasonable basis existed for the jury's verdict that the asserted claims were derived from Darko Perván and/or Tony Perván. *See e.g., Price v. Symsek*, 988 F.2d 1187, 1196 (Fed. Cir. 1993) (holding that courts should consider all the evidence of conception and communication as a whole, not individually, and that "an inventor can conceivably prove prior conception by clear and convincing evidence although no one piece of evidence in and of itself establishes the prior conception."). In light of the foregoing, Pergo's motion for judgment as a matter of law on the issue of derivation, or, in the alternative, for a new trial on the issue of derivation will be denied.

## C. Effective Filing Date of the '970 patent

Pergo moves pursuant to Rules 50(b) and 59 for judgment as a matter of law, or, in the alternative, for a new trial, asserting that the Alloc Parties did not present legally sufficient evidence to permit the jury to reasonably conclude that claims 7, 10, 11, and 12 of the '970 patent were entitled to only an effective date of August 11,

2000, instead of an effective date of February 29, 1996, the filing date of Pergo's PCT Application No. PCT/SE96/00256 ("the Mårtensson PCT"). Pergo filed continuation-in-part ("CIP") patent applications which added subject matter to prior applications. On August 11, 2000, Pergo filed a CIP patent application that matured into United States Patent No. 6,418,683 ("the '683 patent"), which is parent to the '970 patent. The '683 Patent was the first CIP application that made specific reference to "UV curing" resin; earlier Pergo patents referred to "thermosetting" resins. (Trial Ex. 243.) "Subject matter that arises for the first time in the CIP application does not receive the benefit of the filing date of the parent application." *Augustine Med., Inc. v. Gaymar Indus.*, 181 F.3d 1291, 1302 (Fed. Cir. 1999). Patent claims that issue from a CIP application are only entitled to the priority date of the CIP application date for subject matter that first appeared in the CIP application. *Id.* Here, in response to Question No. 9 on the special verdict form, the jury found that claims 7, 10, 11, and 12 of the '970 patent, which include "UV curing resin," were entitled to only an effective filing date of August 11, 2000, the date Pergo filed the CIP patent application that matured into the '683 patent, and not to an effective filing date of February 29, 1996, the filing date of the Mårtensson PCT.

Pergo argues that the disclosure of "thermosetting resins" in the Mårtensson PCT (Trial Ex. 1062) and in U.S. Patent No. 6,101,778 ("the '778 patent") (Trial Ex. 3) would have conveyed to a person of ordinary skill in the art that the inventors were in possession of the "UV-curing resin" subject matter recited in claims 7, 10, 11, and 12 of the '970 patent. Pergo contends that the Alloc Parties offered no evidence to

the contrary. Pergo asserts that the only evidence on this issue offered by the Alloc Parties was the testimony of Dr. Charles Bayha, who offered no opinion on whether or not the disclosure of "thermosetting resin" in the Mårtensson PCT and the '778 patent would reasonably convey to a person of ordinary skill in the art that the patent applicant was in possession of the "UV curing resin" subject matter recited in claims 7, 10, 11, and 12 of the '970 patent. Pergo also argues that the Alloc Parties mischaracterized Dr. Bayha's testimony and the proper legal standard during their closing argument.

A review of the record reveals that a reasonable basis of evidence exists to support the jury's verdict that claims 7, 10, 11, and 12 of the '970 patent were entitled to only an effective date of August 11, 2000, instead of February 29, 1996. For example, the Alloc Parties presented the file histories of the patent applications that preceded the '970 application, in addition to the Mårtensson PCT, showing no specific disclosure of UV curing in its specifications, and the '970 patent showing the references to "UV curing resin" in the specifications. *See, e.g., Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 927 (Fed. Cir. 2004) (noting that "a patent can be held invalid for failure to meet the written description requirement, based solely on the language of the patent specification.") (citing *PIN/NIP, Inc. v. Platte Chemical Co.*, 304 F.3d 1235 (Fed. Cir. 2002)). The jury's verdict also could have relied, in part, upon the jury instructions which pointed out that if the jury found the Mårtensson PCT application did not sufficiently "describe each and every limitation of a patent claim," those claims were not entitled to the filing date of the Mårtensson

Case 2:02-cv-00736-JPS   Filed 05/01/08   Page 11 of 27   Document 287

PCT application. (Jury Instructions 23.) *See also Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1364 (Fed. Cir. 2003) ("To fulfill the written description requirement, the patent specification must describe an invention in sufficient detail that one skilled in the art can clearly conclude that the inventor invented what is claimed.").

In addition, Dr. Bayha described thermosetting resins to the jury. (Trial Tr. 1109-10.) He testified that the melamine-formaldehyde resins that were disclosed in Pergo's patent applications prior to August 11, 2000, were thermosetting resins. (*Id.*) He further explained that thermosetting resins are resins that are cured primarily with heat and that UV-curing resins are cured with ultraviolet radiation. (Trial Tr. 1111-12.) He testified that, in his opinion, thermosetting resins are "dramatically different" from UV-curing resins, and that UV-curing resins are not a type of thermosetting resin. (Trial Tr. 1121, 1124.) The jury was free to weigh this evidence, makes its own credibility determinations, and could reasonably conclude from this evidence that the disclosure of "thermosetting resin" in the Mårtensson PCT and the '778 patent would not convey to a person of ordinary skill in the art that the patent applicant was in possession of the "UV-curing resin" subject matter recited in the claims of the '970 patent. *See Appelbaum*, 340 F.3d at 578-79. In sum, drawing all inferences in the Alloc Parties' favor, and viewing the evidence presented at trial as whole and in a light most favorable to the Alloc Parties, a reasonable basis existed for the jury's verdict that the claims 7, 10, 11, and 12 of the '970 patent were only entitled to an effective date of August 11, 2000, instead of

February 29, 1996. In light of the foregoing, Pergo's motion for judgment as a matter of law on the issue of the effective filing date of the '970 patent, or, in the alternative, for a new trial on the issue of the effective filing date of the '970 patent will be denied.

**D.    Enablement**

Pergo moves pursuant to Rules 50(b) and 59 for judgment as a matter of law, or, in the alternative, for a new trial, asserting that the Alloc Parties did not present legally sufficient evidence to permit the jury to reasonably conclude that claims 1 and 32 of the '547 patent and claims 1 and 4 of the '970 patent were invalid for failing to satisfy the enabling requirement. The enablement requirement is codified in 35 U.S.C. § 112, which provides: "The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same . . . ." *Id.* "The test of enablement is whether one reasonably skilled in the art could make or use the invention from the disclosures in the patent coupled with information known in the art without undue experimentation." *United States v. Telectronics, Inc.*, 857 F.2d 778, 785 (Fed. Cir. 1988).

Pergo argues that the Alloc Parties offered no evidence that would permit the jury to reasonably conclude that claims 1 and 32 of the '547 patent and claims 1 and 4 of the '970 patent did not enable one of ordinary skill in the art to either: (a) make laminate flooring panels that are "tight"; (b) make non-horizontally locking panels;

-13-

and/or (c) use particle board to make laminate flooring panels that are "tight." The court defined the term "tight joint" as follows: "The term 'tight joint' means that neither dirt nor water may penetrate the joint. With respect to water, 'tight' joint means that standing water will not penetrate the joint for several hours." (Jury Instructions 14.) Pergo asserts that the Alloc Parties' expert on this issue, Dr. Douglas Limbert, studied the patents-in-suit and summarized his invalidity opinions in a report and at trial, but he provided no opinion on the alleged non-enablement of either patent. Pergo also argues that the Alloc Parties attempted to reverse the burden by suggesting that Pergo and its expert, Richard Kaczkowski, were required to explain how the patent disclosure was enabling, even though Mr. Kaczkowski was under no obligation to "rebut" evidence or opinions that were never offered by Dr. Limbert. In short, Pergo contends that the Alloc Parties did not present evidence sufficient to overcome the presumption of validity and enablement that attaches to all issued patents. *See* 35 U. S.C. § 282.

It was the Alloc Parties' burden at trial to show by facts supported by clear and convincing evidence that the patents-in-suit were not enabling. *See Telectronics, Inc.*, 857 F.2d at 785. The Alloc Parties argued at trial that the patents-in-suit did not contain any discussion about how to make a "tight joint," as defined by the court. In support of their position, they submitted the respective patent specifications. As noted by the court after the parties presented witness testimony on the issue, "it's really now a matter of the fact-finder looking at the respective patents, the claims and the construct and coming to their own conclusion." (Trial Tr. 1781.) The jury

weighed the evidence submitted by the Alloc Parties, including the patent specifications, and could reasonably conclude from this evidence that the disclosures in the patents did not enable one of ordinary skill in the art to make a "tight joint," as defined by the court, without undue experimentation. *See, e.g., Univ. of Rochester*, 358 F.3d at 930 ("Although section 282 of the Patent Act places the burden of proof on the party seeking to invalidate a patent, it does not foreclose the possibility of that party demonstrating that the patent in suit proves its own invalidity . . . ") (citing *PIN/NIP*, 304 F.3d at 1235; *TurboCare Division of Demag Delaval Turbomachinery Corp. v. General Electric Co.*, 264 F.3d 1111 (Fed. Cir. 2001)). Accordingly, drawing all inferences in the Alloc Parties' favor, and viewing the evidence presented at trial as whole and in a light most favorable to the Alloc Parties, a reasonable basis existed for the jury's verdict that claims 1 and 32 of the '547 patent and claims 1 and 4 of the '970 patent did not satisfy the enabling requirement of 35 U.S.C. § 112. In light of the foregoing, Pergo's motion for judgment as a matter of law on the issue of enablement, or, in the alternative, for a new trial on the issue of enablement will be denied.

### E. Infringement of the '970 patent

Pergo moves pursuant to Rule 59(a) for a new trial on the issue of infringement of the '970 patent. The jury returned a verdict that Pergo had not proven by a preponderance of the evidence that asserted claims 1, 4, 7, and 10-12 of the '970 patent were infringed by the Alloc Parties. Pergo argues that the jury's conclusion was against the clear weight of the evidence, contrary to the court's claim

Case 2:02-cv-00736-JPS   Filed 05/01/08   Page 15 of 27   Document 287

construction orders, and resulted from the Alloc Parties' mischaracterization of the applicable law and jury instructions. Specifically, Pergo argues that the jury returned flawed verdicts on what constitutes the "tongue" and what "penetrate" means in response to Question Nos. 3C and 3F on the special verdict form.

The court's definition of the term "tongue" in the jury instructions was not unequivocal. "The term 'tongue' means a portion of the panel that is designed to mate with a groove of an adjacent panel." (Jury Instructions 13.) In response to Question No. 3F on the special verdict form, the jury determined that the "tongue includes only the part that extends outwardly from the upper edge," as opposed to including the "tongue side of the panel." (Response to Question No. 3F.) Pergo asserts that because the jury unreasonably adopted the more narrow definition of "tongue," the jury necessarily found that Pergo did not prove that the flooring products manufactured by the Alloc Parties ("the accused products") had a protrusion or "snapping web" on the tongue (Question No. 3E), a stabilizing part (Question No. 3G), or joints that force adjacent panels together (Question No. 3H). Pergo argues that, contrary to the jury's verdict and the Alloc Parties' position, the patents-in-suit clearly and unequivocally indicate that the "tongue" of the patents are not limited to "only the part that extends outwardly from the upper edge."

Pergo also asserts that the jury's finding on "penetrate" was against the clear weight of the evidence. In response to Question No. 3C on the special verdict form, the jury indicated that in determining whether a joint was "tight," the jury interpreted the term "penetrate" to mean "that neither water nor dirt pass into the joint," as

opposed to the "through the joint." (Response to Question No. 3C.) Pergo argues that the jury's verdict that the accused products did not have "tight joints" and the jury's verdict that claims 1 and 4 of the '970 patent are not infringed were based on the jury's flawed definition of "penetrate," and that this determination was contrary to the evidence such as portions of the patent specifications.

As noted above, the Seventh Circuit has held that "new trials granted because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Latino*, 58 F.3d at 315. Here, a review of the record reveals a reasonable basis to support the jury's verdict. For example, Figures 4 through 8 of the '970 patent depict the tongue in a manner that supports the jury's verdict. (Trial Ex. 2.) In addition, testimony from several different witnesses supports the jury's decision to adopt the more narrow definition of a "tongue." (Trial Tr. 302-04, 516-18, 760-61, 1323-25; *see also* Exs. 64 and 65.) Furthermore, a reasonable basis of evidence, including the wording of the specification of the '970 patent itself, supports the definition of the term "penetrate" adopted by the jury. (*See* '970 patent Col. 3 ll. 29-31 ("Of course, without any substantial gap between the panels, water and dirt are prevented from entering the assembled panels, flooring, or wall covering.")). Testimony from several different witnesses also supports the definition of the term "penetrate" adopted by the jury, where water passing into a joint is a sufficient condition to constitute penetration. (Trial Tr. 471, 1333-34.)

Pergo also argues that contrary to the jury's finding on the "end user/direction" inquiry, Question No. 3I on the special verdict form, the clear weight of the evidence demonstrates that each Alloc Party routinely performs all of the method steps in claims 1 and 4 of the '970 patent, and that end users act under the direction and control of the Alloc Parties because the Alloc Parties provide detailed instructions with the accused products. Direct infringement occurs when an accused party performs each and every step of a claimed method. *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17 (1997) (holding that the doctrine of equivalents, like literal infringement, must be tested element by element). Direct infringement also occurs when an accused party directs someone else to perform one or more of the claimed steps on its behalf. *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1379 (Fed. Cir. 2007). Thus, if a party exercises control over the performance of a process, then even though such party is not physically performing certain claimed steps, it is nonetheless liable for infringement of the entire method. *Id.* at 1380-82.

In response to Question No. 3I on the special verdict form, the jury indicated that Pergo did not prove by a preponderance of the evidence that end users of the accused products install those products on behalf, that is, under the direction and control of, a single party among the Alloc Parties. (Response to Question No. 3I.) Pergo asserts that this conclusion is against the clear weight of the evidence including testimony that Alloc, Inc. and Berry Wood S.A. assemble the products as part of their "quality control testing." (Trial Tr. 719-20, 779-81, 996-97, Ex. 179.)

Pergo argues that the assembling of the products by the Alloc Parties constitutes direct infringement. Pergo also argues that by including instructions with the accused products, the Alloc Parties exercise "direction or control" over the performance of the claimed steps, and thus, they are liable for infringement. *See BMC Resources*, 498 F.3d at 1380-82; *see also Privasys, Inc. v. Visa International*, 2007 U.S. Dist. LEXIS 86838, 2007 WL 3461761, slip op. at *2 (N.D. Cal. Nov. 14, 2007) (discussing *BMC* and noting that because Visa "provides instructions or directions regarding the use of its payWave card to the merchants and banks involved in the process," this evidence "tend[s] to show that Visa exercised 'direction or control'" over the performance of the patented method).

As a preliminary matter, given that a reasonable basis exists for the jury's findings on what constitutes a "tongue" and what "penetrate" means in response to Question Nos. 3C and 3F on the special verdict form, and, as such, a reasonable basis supports the jury's verdict that Pergo did not prove by a preponderance of the evidence infringement of the '970 patent, the jury's finding on Question No. 3I on the special verdict form is, in effect, irrelevant. Irrespective of the "end user/direction" inquiry, the jury reasonably concluded that the accused products did not have "tight joints," a protrusion in the tongue, or a stabilizing part. (Responses to Question Nos. 3B, 3E, 3G.) Therefore, even if the jury found that end users of the accused products installed those products on behalf of the Alloc Parties in response to Question No. 3I, a new trial would not be warranted. Moreover, the jury could have concluded, as the Alloc Parties argued, that the Alloc Parties included instructions

-19-

with the accused products as a matter of convenience for their customers, not to control the conduct of their customers. In sum, drawing all inferences in the Alloc Parties' favor, and viewing the evidence presented at trial as whole and in a light most favorable to the Alloc Parties, the court is unable to conclude from the record that the jury's finding on the "end user/direction" inquiry resulted in a "miscarriage of justice" or a verdict that "cries out to be overturned or shocks our conscience." *Latino*, 58 F.3d at 315. In light of the foregoing, Pergo's motion for a new trial on the issue of infringement of the '970 patent will be denied.

### F. Obviousness

Pergo moves pursuant to Rules 50(b) and 59 for judgment as a matter of law, or, in the alternative, for a new trial, asserting that the Alloc Parties did not present legally sufficient evidence to permit the jury to reasonably conclude that claims 1 and 32 of the '547 patent and claims 1, 4, 7, 10, 11, and 12 of the '970 patent would have been obvious to a person of ordinary skill in the art at the time the claimed inventions were made. Pursuant to 35 U.S.C. § 282, all issued patent claims are presumed to be valid and, by extension, all claims are presumed to be nonobvious. *See, e.g., Structural Rubber Products Co. v. Park Rubber Co.*, 749 F.2d 707, 714 (Fed. Cir. 1984) (referring to the "presumption of nonobviousness"). A patent may be invalid for obviousness under section 103 of the Patent Act if the differences between the claimed subject matter and the prior art "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a).

-20-

Under this provision, the claimed subject matter must be taken "as a whole" instead of as individual elements of an invention. *See e.g., KSR Intern. Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1741 (2007) ("inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known.") In addition, under section 103, the appropriate inquiry is whether an invention would have been obvious to a person of ordinary skill at the time the invention was made. *Hybritech*, 802 F.2d at 1379. As the jury instructions used at trial explained, "In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining items of prior art." (Jury Instructions 32.)

Pergo argues that the Alloc Parties offered no evidence that would permit the jury to reasonably conclude that claims 1 and 32 of the '547 patent and claims 1, 4, 7, 10, 11, and 12 of the '970 patent would have been obvious to a person of ordinary skill in the art at the time the claimed inventions were made. Specifically, Pergo argues that the Alloc Parties did not present a single prior art reference with a "tight joint" as that term has been defined by the court. As noted above, the court defined a "tight joint" to mean "that neither dirt nor water may penetrate the joint. With respect to water, 'tight' joint means that standing water will not penetrate the joint for several hours." (Jury Instructions 14.) Pergo also argues that the Alloc Parties presented evidence regarding obviousness using the wrong time frame of when the

patents were filed in 2000, instead of when the inventions were made in the mid-1990s, the appropriate time frame. *See Hybritech*, 802 F.2d at 1379. In addition, Pergo argues that the Alloc Parties' expert, Dr. Limbert, improperly broke the claims into their component parts instead of treating the subject matter as a whole, as required by section 103(a). Pergo contends that contrary to the jury instructions and controlling law, Dr. Limbert used the claims as a "road map," as demonstrated by Trial Exhibit 774, to show how he found various claim elements in the prior art. This approach, Pergo asserts, improperly discounts the value of combining various existing features or principles in a new way to achieve a new result, and improperly imports hindsight into the obviousness determination by using the invention as a roadmap to find its prior art components. *See, e.g., Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1332, 1337 (Fed. Cir. 2005). Pergo also argues that the Alloc Parties failed to present evidence explaining how or why a person of ordinary skill would have combined the prior art references to achieve the claimed inventions. *See, e.g., Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1374 (Fed. Cir. 2008) (affirming the district court's decision to preclude expert testimony that was "vague and conclusory obviousness testimony which did not offer any motivation for one skilled in the art to combine the particular references he cites in order to practice the claimed method."). Finally, Pergo contends that the jury's response to Question No. 12 on the special verdict form should be set aside because the question was too broad and the question included prior art that was not discussed by the parties at trial.

The Supreme Court recently noted that the "obviousness analysis cannot be confined by a formalistic conception of the words teaching, suggestion, and motivation, or by overemphasis on the importance of published articles and the explicit content of issued patents." *KSR*, 127 S. Ct. at 1741. The *KSR* court held that the obviousness analysis, including what would have suggested the combining of known elements, can be driven by such non-patent factors as "market demand" and "design trends." *Id.*

> In determining whether the subject matter of a patent claim is obvious, neither the particular motivation nor the avowed purpose of the patentee controls. What matters is the objective reach of the claim. If the claim extends to what is obvious, it is invalid under § 103. One of the ways in which a patent's subject matter can be proved obvious is by noting that there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims.

*Id.* at 1741-42.

Here, the Alloc Parties presented extensive patent prior art evidence in addition to non-patent evidence such as market changes and design trends supporting obviousness. For example, the Alloc Parties presented demonstrative exhibits to show prior art examples such as the Aoki and Piodi patents arguably demonstrating the formation of a "tight joint." (Trial Ex. 774 at 11-13.) The Alloc Parties also presented witness testimony and other evidence from Darko Perván regarding developments in the market and the move towards mechanically locking flooring panels. (Trial Tr. 1187-90, Ex. 227-T.) Mr. Perván testified that one of the topics discussed at the 1994 meetings with Pergo was making a tight joint. (Trial Tr.

1196-97.)  The jury could have reasonably accepted Mr. Perván's testimony as "background knowledge possessed by a person having ordinary skill in the art," which can provide a motivation to combine old elements to make the claimed combination.  *See KSR*, 127 S. Ct. at 1740-41.  As the Supreme Court in *KSR* noted:

> When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill in the art has good reason to pursue the known options within his or her technical grasp.  If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense.  In that instance the fact that a combination was obvious to try might show that it was obvious under § 103.

*Id.* at 1742.

The fact that Dr. Limbert may have opined from the perspective of one of ordinary skill in the art in the year 2000 does not require the court to set aside the jury's verdict.  (Trial Tr. 1435.)  As counsel for the Alloc Parties pointed out, most of the prior patents, including the Aoki and Piodi patents, issued before 1995, when the inventions in the patents-in-suit were made.  (Trial Tr. 2418.)  And, as noted above, other evidence besides Dr. Limbert's testimony supports the jury's verdict.  In addition, the court cannot conclude that the use of the claim chart, Trial Exhibit 774, warrants setting aside the jury's finding on obviousness.  Indeed, the jury was free to use the claim chart, a demonstrative exhibit, as a relevant aid in determining whether specific elements of the patents-in-suit would have been obvious to a person of ordinary skill at the time the inventions were made.  *See, e.g., KSR*, 127 S. Ct. at 1739 ("The combination of familiar elements according to known methods

is likely to be obvious when it does no more than yield predictable results."). Furthermore, the court is unable to conclude that the jury's answer to Question No. 12 on the special verdict form must be set aside because the question listed several examples of prior art. The Alloc Parties presented several examples of patent prior art listed in Question No. 12 to support their obviousness argument, and Pergo has not demonstrated a compelling reason to set aside the jury's answer to this question. *See., e.g., id.* at 1741 (rejecting formalistic and rigid obviousness analysis). In sum, drawing all inferences in the Alloc Parties' favor, and viewing the evidence presented at trial as whole and in a light most favorable to the Alloc Parties, a reasonable basis existed for the jury's verdict that claims 1 and 32 of the '547 patent and claims 1, 4, 7, 10, 11, and 12 of the '970 patent would have been obvious to a person of ordinary skill in the art at the time the claimed inventions were made. In light of the foregoing, Pergo's motion for judgment as a matter of law on the issue of obviousness, or, in the alternative, for a new trial on the issue of obviousness will be denied.

Finally, Pergo's belated complaints that comments made by the Alloc Parties during their closing argument regarding obviousness and the effective filing date of the '970 patent were improper do not warrant the setting aside of the jury's verdict or a new trial. *See Jones v. Lincoln Electric Co.*, 188 F.3d 709, 730 (7th Cir. 1999) (noting that the Seventh Circuit has "repeatedly recognized that improper comments during closing argument rarely rise to the level of reversible error.") (internal quotation omitted). Indeed, the court instructed the jury that counsel's statements are not evidence. (Trial Tr. 2040, 2427.) The court notes that the jury in this case

sat attentively through a two-week trial, actively participated in the trial by submitting numerous written questions, most all of which were deemed appropriate by the court and counsel, and, therefore, propounded to the various witnesses by the court. Moreover, the jury deliberated and weighed the evidence for two days before reaching its unanimous verdict. The court cannot second-guess the jury's credibility determinations and will not disturb the jury's factual findings unless the evidence adduced at trial leads only to one conclusion. *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 515 (7th Cir. 1993). Viewing all the evidence in the Alloc Parties' favor, the court concludes that the jury's verdict was consistent with and supported by the evidence at trial. *See Spesco*, 719 F.2d at 237. As such, Pergo's requests to set aside the jury's verdict, or in the alternative, grant a new trial, will be denied and the judgment will stand.

Accordingly,

**IT IS ORDERED** that Pergo's Rule 50(b) motion for judgment as a matter of law on the issue of best mode (Docket #251) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Pergo's Rule 50(b) motion for judgment as a matter of law on the issue of derivation, or, in the alternative, a new trial on the issue of derivation (Docket #253) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Pergo's Rule 50(b) motion for judgment as a matter of law on the issue of the effective filing date of the '970 patent, or, in the alternative, a new trial on the issue of the effective filing date of the '970 patent (Docket #255) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Pergo's Rule 50(b) motion for judgment as a matter of law on the issue enablement, or, in the alternative, a new trial on the issue of enablement (Docket #257) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Pergo's Rule 59(a) motion for a new trial on the issue of infringement of the '970 patent (Docket #259) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Pergo's Rule 50(b) motion for judgment as a matter of law on the issue of obviousness, or, in the alternative, a new trial on the issue of obviousness (Docket #261) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 1st day of May, 2008.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge