UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

ALLOC, INC., a Delaware corporation,
BERRY WOOD S.A., a French company,

        Plaintiffs,
  v.

PERGO, INC., a Delaware corporation,
PERGO AB, a Swedish company,

        Defendants.
_____  Case No. 02-C-0736

PERGO, INC., and PERGO (EUROPE) AB,

        Plaintiffs,
  v.

ALLOC, INC., ARMSTRONG WORLD
INDUSTRIES, INC. and BERRY FINANCE NV,

        Defendants.
_____

# ORDER

On June 25, 2008, Pergo, Inc. and Pergo AB (collectively, "Pergo") filed a motion for relief from judgment and a new trial under Rule 60(b). Pergo asks for relief from the jury verdict rendered against it on claims of patent infringement. Pergo brought the patent infringement claims against Alloc, Inc., Berry Wood S.A., and Armstrong World Industries, Inc. (collectively, "Alloc") based on flooring products manufactured by Alloc. The trial commenced on November 26, 2007, and the jury returned a verdict on December 13, 2007, finding that Alloc did not infringe Pergo's U.S. Patent Nos. 6,397,547 ("the '547 patent") and 6,421,970 ("the '970 patent").

Pergo now seeks a new trial under Rule 60(b)(3) based on newly discovered information revealing that Alloc made misrepresentations during trial. Pergo alleges that Alloc misrepresented that manufacturing was ongoing at its Racine, Wisconsin plant when, in fact, manufacturing had been shifted to China and Germany several months earlier. For the reasons discussed below, the court finds that Pergo does not meet the three-part test for granting a new trial under Rule 60(b)(3) and Pergo's motion will be denied.

Rule 60(b) of the Federal Rules of Civil Procedure provides several grounds for relief from a final judgment, order, or proceeding. Fed. R. Civ. P. 60(b). Stated another way, Rule 60(b) governs collateral attack on a final judgment rendered by a federal district court in a civil case. *Bell v. Eastman Kodak Co.*, 214 F.3d 798, 800-01 (7th Cir. 2000). However, this type of collateral attack is generally disfavored because of the social interest in expedition and finality in litigation. *Id.* at 801. Under Rule 60(b)(3), the court may provide relief to a party if the opposing party committed fraud, misrepresentation, or misconduct. Fed. R. Civ. P. 60(b)(3).

To obtain relief under Rule 60(b)(3) based on fraud, misrepresentation, or misconduct, a movant must prove that: "1) the party maintained a meritorious claim at trial; and 2) because of the fraud, misrepresentation or misconduct of the adverse party; 3) the party was prevented from fully and fairly presenting its case at trial." *Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir. 1995). The requirements apply to both intentional and unintentional misrepresentations. *Id.* However, the test does not

require the court to determine whether the alleged misrepresentation altered the result of the case. *Id.* This is because Rule 60(b)(3) protects the fairness of the proceedings, but not necessarily the correctness of the verdict. *Id.* Despite the Rule's concern for protecting fairness, the moving party must still prove it is entitled to a new trial by clear and convincing evidence. *Id.* Further, a court must weigh the finality of judgment against fundamental fairness in evaluating these requirements. *Id.*

As noted above, Pergo must meet a three-part test to merit a new trial under Rule 60(b)(3). *Lonsdorf*, 47 F.3d at 897. First, Pergo must show that it maintained a meritorious claim at trial. *Id.* Second, Pergo must show fraud, misrepresentation, or misconduct by Alloc. *Id.* Third, Pergo must show that the misconduct by Alloc prevented it from fully and fairly presenting its case at trial. *Id.* After evaluating Pergo's motion for a new trial under this test, the court finds that it fails at step three.

**A.   Meritorious Claim at Trial**

Pergo asserts that it meets the first part of the Rule 60(b)(3) test, maintaining a meritorious claim at trial, by establishing a prima facie case of patent infringement through expert testimony and evidence about each allegedly infringing product. Pergo also argues that it maintained a meritorious claim because the court denied Alloc's pre-trial motion for summary judgment of non-infringement. In contrast, Alloc argues that Pergo did not maintain a meritorious case and points to the jury's findings of non-infringement and invalidity of the asserted claims. The court

-3-

disagrees that a jury finding against Pergo suggests that its claim did not have merit. Instead, the court finds that Pergo maintained a meritorious claim based on the comprehensive case presented at trial and the court's denial of Alloc's motions for summary judgment and for judgment as a matter of law.

Pergo argued its case during a three week jury trial running from November 26, 2007, until December 13, 2007. Pergo's case-in-chief consumed two days and involved eight witnesses and more than sixty trial exhibits. In addition, the court denied Alloc's motion for summary judgment on non-infringement and partial invalidity claims and declined to grant Alloc a Rule 50(a) judgment as a matter of law at the close of evidence, demonstrating that Pergo presented a meritorious case at trial. *See Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir. 1995) (evaluating step one in the three-part test for a new trial under Rule 60(b)(3) and finding that the plaintiff presented a meritorious sexual harassment claim at trial, as "demonstrated by the district court's denial of [defendant's] motion for a judgment as a matter of law.") Based on the case Pergo presented to the jury and the court's denial of Alloc's motions for summary judgment and judgment as a matter of law, the court concludes that Pergo maintained a meritorious claim at trial.

**B.     Fraud, Misrepresentation or Misconduct**

Pergo asserts that it meets the second part of the Rule 60(b)(3) test, demonstrating misconduct by Alloc, based on the following: Alloc's failure to update discovery requests, Alloc's presentation of inaccurate testimony at trial, and

counsel's reliance on the inaccurate testimony during closing arguments. Specifically, Pergo alleges that Alloc did not disclose documentation evidencing that the Racine plant ceased manufacturing operations prior to the jury trial, despite interrogatories and document requests related to manufacturing. Pergo also asserts that Alloc presented inaccurate testimony from Brian Hawes, Vice President of manufacturing in Racine, suggesting that certain Alloc products were presently manufactured in Racine.  Finally, Pergo asserts that Alloc relied on this inaccurate testimony to make inflammatory statements during closing arguments that Pergo wanted to "shut down" Racine manufacturing.  In response, Alloc argues that the allegedly misleading or false statements were technically accurate and correct. Alloc also asserts that the location where it manufactured the allegedly-infringing products was not a key issue in the case.

To determine whether Mr. Hawes' statements at trial constitute technical misrepresentation, this court would have to engage in a statement-by-statement analysis of whether he employed the past versus present tense and whether the attorney phrased his question using the subjunctive.  The determination would also require the court to analyze the disputed number of Alloc workers who remained employed in Racine, the date  when manufacturing ceased, and which documents are "related to manufacture" and which are not.  The court declines to conduct this detailed and fussy analysis because the individual determinations are unimportant to the ultimate outcome.  As stated above, misrepresentation that qualifies for relief

under Rule 60(b)(3) can be either intentional or unintentional. However, even if the court found that Alloc committed misrepresentations about manufacturing in Racine, Pergo's argument fails at step three of the test. Therefore, the court will not make a finding on misrepresentation, but instead, will proceed to the issue of whether the alleged misrepresentations prevented Pergo from fully and fairly presenting its case.

**C.      Prevented from Fully and Fairly Presenting a Case at Trial**

Pergo asserts that it meets the third prong of the Rule 60(b)(3) test, that it was prevented from fully and fairly presenting its case at trial, because it would have substantively altered its trial strategy if aware that manufacturing in Racine had ceased. Specifically, Pergo argues that it could have mitigated any emotional impact of Alloc's "insinuations" that a ruling in favor of Pergo would put neighbors in Racine out of work and countered Alloc's attempts to "stir up local allegiances." In response, Alloc argues that the location of manufacture is not a key issue in the case. Alloc asserts that location does not impact the real issues of: 1) whether the products meet all the limitations of the asserted claims; 2) whether the invention was derived from Välinge; and 3) whether the invention was obvious in view of the prior art. The court finds that Alloc's alleged misrepresentations and failure to disclose that manufacturing in its Racine plant had ceased by the time of trial did not prevent Pergo from fully and fairly presenting its case.

Isolated comments by Alloc's counsel or Mr. Hawes did not unfairly impede Pergo in its presentation of a comprehensive case for patent infringement. In

-6-

support of its argument for a new trial, Pergo points to "inflammatory" comments made by Alloc's counsel during closing argument. Pergo highlights counsel's comments that Pergo "want[s] to shut down the Alloc plant in Racine." (Tr. 2181-82). Pergo also points to a statement by Alloc's counsel that counsel for Pergo "thought he was gonna stand up here and come in here and talk to you for a little while and go back to New York with $84 million in his pocket." (Tr. 2383). In addition, Pergo points to Mr. Hawes' testimony identifying certain flooring products as the type *made* in Racine. (Tr. 719-20, 737) (emphasis added). Finally, Pergo highlights two references by Alloc's counsel to "products made in Racine" and "the top guy at Alloc who has been *making* these products for years down in Racine..." (Tr. 2235) (emphasis added).

However, the court finds that the aforementioned comments are innocuous and did not prevent Pergo from presenting its case fully and fairly at trial. First, the comments did not create an atmosphere of regional bias that Pergo had to counter to fairly present its patent infringement case. The brief and isolated present-tense statements about manufacturing do not merit a new trial, particularly when considered in the context of Alloc's four hour closing argument, the three week trial, and the thousands of pages of transcript generated by the proceedings.

Second, the location of manufacture for Alloc's products is not directly related to a central issue in the case. Even if Alloc wrongly implied that product was currently manufactured in Racine, the issue of whether manufacturing did or did not

-7-

occur in Racine at the time of trial is not central to a determination of patent infringement. Therefore, any un-rebutted statements that Alloc was presently manufacturing in Racine did not prevent Pergo from presenting its case.

Finally, the case law Pergo cites in support of its argument for a new trial is readily distinguishable because it involves misconduct directly related to a central issue in the case or involves more numerous and severe incidents of misconduct committed by the opposing party. The misconduct in the cited case law merited a new trial. However, the alleged misrepresentations in the instant case do not.

Pergo first likens Alloc's alleged misrepresentations about manufacturing to the misconduct by counsel which merited a new trial in *Lonsdorf v. Seefeldt*, 47 F.3d 893 (7th Cir. 1995). In *Lonsdorf*, the plaintiff filed a sexual harassment action against the defendant for incidents occurring while the defendant provided her with employment training. *Id.* at 895-96. At trial, defense counsel based his closing argument, in part, on a training schedule ostensibly prepared prior to the plaintiff's training. *Id.* at 896. Defense counsel utilized this schedule to demonstrate that the defendant did not harass the plaintiff, but rather, that she mistakenly viewed training exercises as sexual harassment. *Id.* Following a jury verdict in favor of the defendant, the plaintiff discovered that the training schedule produced as evidence during trial had been altered. *Id.* The court held that the misconduct required a new trial, pursuant to Rule 60(b)(3), because it is "patently obvious that [the defendant]

-8-

benefited from the use of a fraudulently altered document and that [the plaintiff] suffered an injustice." *Id.* at 898.

In *Lonsdorf*, the misconduct was directly related to the sexual harassment claim at issue because counsel used the altered training schedule to argue that no sexual harassment occurred. In contrast, Pergo's allegations of misrepresentation are not directly related to its patent infringement claims. Pergo argues that Alloc's misrepresentations about Racine may have incited false regional loyalties. However, unlike the defendant in *Lonsdorf*, Alloc did not allude to ongoing manufacturing in Racine to prove that patent infringement did not occur. Indeed, whether Alloc was manufacturing product in Racine at the time of trial does not implicate patent infringement at all. The defense counsel's use of a fraudulent schedule in *Lonsdorf* prevented the plaintiff from fully and fairly presenting her case and merited the grant of a new trial. However, Alloc's complained-of remark that Pergo "wants to shut down the Racine plant" and its references to products "made in Racine" do not.

The court similarly distinguishes *Wharf v. Burlington Northern Railroad Company* based on the direct connection between the matter at issue in the case and the misconduct committed. 60 F.3d 631 (9th Cir. 1995). In *Wharf*, the plaintiff was an employee who sued the railroad for an injury occurring on the job. *Id.* at 633. The plaintiff prevailed at trial, was awarded compensatory damages, and the defendant railroad company subsequently appealed the decision. *Id.* The plaintiff cross-appealed and moved for a new trial under Rule 60 based on

-9-

misrepresentations made by defense counsel during closing arguments. *Id.* at 634. Prior to trial, the parties stipulated that the plaintiff would continue his employment with the railroad and defense counsel claimed during closing arguments that the plaintiff "still has his job." *Id.* at 634. However, defense counsel knew that the defendant had decided to terminate the plaintiff. *Id.* In addition, defense counsel failed to inform the plaintiff, plaintiff's counsel, or the court about the termination, instead allowing the court to read the false stipulated fact to the jury. *Id.* at 634, 637. Based on this misconduct, the court granted the plaintiff a new trial. *Id.* at 639. The court found that the misconduct prevented the plaintiff from fully or fairly presenting his damages case because, had he known about the firing at the time of trial, the plaintiff "could have asked for additional damages from the jury." *Id.* at 638. Therefore, the court found that defense counsel's misconduct was directly related to the plaintiff's case regarding damages. In contrast, Alloc's alleged misrepresentations do not directly relate to Pergo's case about patent infringement. The question of whether Alloc's products infringed on Pergo's patents is only distantly related, if related at all, to whether manufacturing was ongoing in Racine at the time of the trial.

The court distinguishes Pergo's other cited caselaw, *Polansky v. CNA Insurance Company*, 852 F.2d 626 (1st Cir. 1988), based on the numerous misrepresentations and varied misconduct involved. In *Polansky*, the plaintiff was a trustee of a Trust that owned an apartment building insured by the defendant. *Id.*

at 627. The apartment building partially burned, killing five people. *Id*. Afterwards, the defendant insurer refused to reimburse the plaintiff because it believed that the plaintiff set the fire deliberately. *Id*. The plaintiff then sued the defendant for denying his claim. *Id*. At trial, plaintiff's counsel repeatedly expressed his personal beliefs and opinions about the case and concluded that the insurance company was defending the suit because it did not want to pay the families of the people who died in the fire. *Id*. at 627-29. Plaintiff's counsel also made blatant misrepresentations to the court which resulted in erroneous evidentiary rulings and the exclusion of an expert's testimony. *Id.* at 630-32. The jury decided for the plaintiff and awarded him damages. *Id*. at 627. In granting the defendant a new trial, the court noted that the "death claims" of the victims' families were irrelevant to the case and counsel's references to these claims suggested a jury decision on an improper basis. *Id*. at 629-30. In addition, the court emphasized the clear misrepresentations made by plaintiff's counsel to the court. *Id*. at 631-32. Indeed, the amount of misconduct committed by plaintiff's counsel prompted the court to admonish him about playing "fast and loose" with the judicial system. *Id*. at 632. Ultimately, the court found that the errors at trial caused by counsel's misconduct were "sufficiently numerous and collectively prejudicial" to require a new trial. *Id*. In contrast, Alloc's counsel did not commit a variety of misconduct or play "fast and loose" with the court. In addition, any misrepresentation about ongoing manufacturing did not cause errors at trial, much less errors "sufficiently numerous" to merit a new trial. *Id*.

-11-

Pergo fails to establish that Alloc's alleged misconduct prevented it from presenting its case fully and fairly. Therefore, Pergo does not meet the three-part test under Rule 60(b)(3) for a new trial. As a result, the court is obliged to deny Pergo's Rule 60(b) motion.

Accordingly,

**IT IS ORDERED** that Pergo's Rule 60(b) motion for a new trial (Docket #289) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 10th day of October, 2008.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge